UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**DECOTIIS, FITZPATRICK & COLE, LLP**
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666
(201) 928-1100
Email: jsmith@decotiislaw.com
*Attorneys for Plaintiff Algonquin Gas Transmission, LLC*

| | |
|---|---|
| ALGONQUIN GAS TRANSMISSION, LLC, a limited liability company of the State of Delaware,<br><br>    Plaintiff,<br><br>v.<br><br>0.11 Acres Of Land, More or Less, In STONY POINT, ROCKLAND COUNTY, NEW YORK; MICHAEL MACALPIN AND CORDIS MACALPIN, fee owners; and ALL UNKNOWN OWNERS (fictitious name defendants),<br><br>    Defendants. | Civil Action No. 15-cv-06178-CM<br><br><br>**DECLARATION OF JAMES LUSKAY** |

James Luskay, of full age, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Regional Director of Engineering and Construction for Plaintiff Algonquin Gas Transmission, LLC ("Algonquin"), and oversee the Algonquin Incremental Market Project (the "AIM Project"), which primarily involves the replacement of existing 26-inch diameter pipeline with 42-inch diameter pipeline along Algonquin's existing and new right-of-way in Rockland and Westchester Counties, as well as modifications to existing metering and regulating stations and compressor stations to provide increased volumes of natural gas to southern New England.

2. As the Regional Director, I am responsible for leading the Project team and am

1

ultimately responsible for the cost and execution of the Project.

3.      I make this Declaration in support of Plaintiff's Motion for Partial Summary Judgment.

4.      The easement identified as Tract R-83.01 on Block 5, Lot 52 is necessary for Algonquin to construct, operate and maintain the Project as required by the FERC Certificate.

**Background Information**

5.      Algonquin is an interstate natural gas transmission company that is a wholly-owned subsidiary of Spectra Energy Partners, LP.

6.      My duties and job responsibilities for Algonquin include implementation of the design, permitting and construction for the Project.  In connection with the planning of the Project, I am familiar with the Federal Energy Regulatory Commission's ("FERC") requirements for design and construction of interstate natural gas pipelines, with the FERC Certificate authorizing the Project, with the design of and the construction requirements for the Project's physical facilities and with the required construction schedule.

7.      On March 3, 2015, the FERC issued a Certificate of Public Convenience and Necessity to Algonquin for the construction of the Project. A true copy of the FERC Certificate is attached hereto as **Exhibit A.**[1]

8.      The Project will create up to 342,000 dekatherms per day of firm pipeline capacity to deliver natural gas to the Northeast market area to meet immediate and future supply and load growth requirements.  Specifically, the Project will create the additional capacity from the Ramapo, New York receipt points on Algonquin's systems to various Algonquin city gate

---

[1] The FERC Certificate issued on March 3, 2015 at Docket No. CP14-96-000, is available at http://www.ferc.gov/CalendarFiles/20150303170720-CP14-96-000.pdf.

delivery points in Connecticut, Rhode Island and Massachusetts. The Project includes the construction of approximately 37.6 miles of take-up and relay, loop and lateral pipeline facilities, modifications to five existing compressor stations resulting in the addition of 72,240 horsepower of compression, modifications to 24 existing metering and regulating ("M&R") stations, and the construction of three new M&R Stations.

9.      In New York State, the Project consists of 15.7 miles of the replacement of 26-inch diameter pipeline with 42-inch diameter pipeline in the existing Algonquin right-of-way that was established in the early 1950s and the installation of approximately 2.9 miles of new 42-inch diameter pipeline in a new right-of-way that will cross below the Hudson River via horizontal directional drill. The Project also involves modifications to Algonquin's existing compressor stations located within the Town of Stony Point, Rockland County and within the Town of Southeast, Putnam County. Modifications are also proposed to Algonquin's existing Stony Point, Peekskill and Cortlandt M&R stations involving new piping, heaters and regulators and the installation of various piping, valves, and internal inspection devices referred to as launchers and receivers.

10.     The purpose of the Project is to provide the necessary pipeline capacity to transport significant and diverse natural gas supplies economically from a receipt point at Ramapo, New York to local distribution company shippers' delivery points in Connecticut and Massachusetts in order to meet their immediate and planned load growth demands. Natural gas is an economic source of fuel that is domestically produced, clean-burning and efficient. Demand in the region is expected to continue to increase as more homes, commercial buildings, and industrial sources convert combustion and heating units and appliances to natural gas. In addition, the increased pipeline capacity along a significant portion of Algonquin's

3

mainline will also partially alleviate existing system constraints, resulting in increased commodity price competition and reduced gas price volatility in the region.

11. Algonquin was required to provide FERC with evidence of commercial agreements with eight local distribution companies and two municipal utilities including Bay State Gas Company; Boston Gas Company; Colonial Gas Company; Connecticut Natural Gas Corporation; Middleborough Gas and Electric; The Narragansett Electric Company; Norwich Public Utilities; NSTAR Gas Company; The Southern Connecticut Gas Company; and Yankee Gas Services Company (the "Project Shippers") for the delivery of the entire capacity of the AIM Project. The in-service date for the delivery of natural gas in the contracts between Algonquin and the Project Shippers is November 1, 2016.

12. Construction of the New York portion of the Project is scheduled to commence on or before October 1, 2015 and to be completed by October 31, 2016.

**The FERC Certification Process**

13. On February 28, 2014, Algonquin filed an application with FERC for a certificate of public convenience and necessity to construct and operate its pipeline expansion project.

14. Algonquin's project underwent an extensive review process. FERC evaluated the public need for the Project and completed a thorough review of environmental impacts and operational considerations before issuing the FERC Certificate authorizing the Project.

15. The public was notified of the Project and was provided numerous opportunities to comment on the Project. The Notice of Intent to Prepare an Environmental Impact Statement (EIS) for the Project, Request for Comments on Environmental Issues, and Notice of Public Scoping Meetings was published in the Federal Register on September 19, 2013, and the notice

4

of Algonquin's application was published in the Federal Register on March 24, 2014. The notice of the draft EIS was published in the Federal Register on August 12, 2014. The final EIS for the Project was issued by FERC staff on January 23, 2015 and was noticed in the Federal Register.

16.     FERC held scoping meetings, noticed the application and EIS for the Project as referenced above, and considered hundreds of comments from a number of parties, including agencies; elected officials; environmental and public interest groups; potentially affected landowners; and other interested stakeholders before issuing the FERC Certificate.

17.     Algonquin is seeking all environmental approvals necessary to begin construction of the Project. On May 5, 2015, Algonquin received a Section 401 Water Quality Certification from United States Army Corps of Engineers.

**Project Construction**

18.     To complete construction of the AIM Project in accordance with the Certificate and along the approved alignment, Algonquin requires a temporary easement for a 42-inch diameter pipeline and appurtenant facilities to be installed on property owned by MICHAEL MACALPIN AND CORDIS MACALPIN (the "Property") as more particularly identified as Tract R-83.01 in the Verified Complaint.

19.     The pipeline will be constructed in linear segments with multiple construction crews and equipment performing different functions in sequence, i.e., clearing, grading, ditching, stringing, installation, backfilling, etc. In certain locations the pipeline may also be constructed by a composite crew which essentially combines the segmented sequenced construction into a single crew that performs all of these activities in sequential "assembly line" order. Construction also entails the complex coordination of construction activities controlled by contractors during two construction seasons that include certain environmental "no work" periods and "no access"

5

parcels where entry has been denied. Construction has been planned so that there will not be conflicting activities occurring at any location along the FERC-approved route. Accordingly, there are critical "start" dates for all construction activities.

20.     Before installation of the pipeline can begin, pre-installation activities must be performed and completed sequentially.  The pre-installation activities include sequential tree cutting and clearing.   To avoid impacts to the Indiana bat, a federally listed endangered species, tree clearing must occur in the U.S. Fish and Wildlife Service designated tree clearing window from October 1 to March 30.  (FEIS at 4-113).  The northern long-eared bat is also proposed for listing as a federally endangered species and thus FWS requires tree clear within the same window.  (FEIS at 4-115).  The tree cutting and clearing must be completed between October 1, 2015 and March 30, 2016.  In order to maintain the pipeline construction schedule, tree cutting and clearing must begin on October 1, 2015.

21.     Once construction commences, Algonquin will be liable for any delays that occur if a contractor is unable to access a property in sequential order.  In that event, Algonquin could be liable for delay costs that are estimated to be $50,000 per day. Additionally, if the sequenced work schedule is disrupted by a bottleneck that occurs at a "no access" property, then the only alternative is to "skip" that property and move the crews and equipment to the next accessible property. That will require the crew to return to the skipped property at a later date.  The "move around" costs for each skipped property would likely exceed $520,000.00.  These delay costs, if incurred, would not be recoverable.

22.     It is critical that Algonquin be able to provide the contractors with access to all properties for pre-installation and construction work along the route of the AIM Project. Without access to necessary properties in a timely manner, Algonquin's ability to complete construction

of the Project by November 1, 2016 will be jeopardized.

23.     Construction of the pipeline must begin on or about October 1, 2015 in order to meet the required November 1, 2016 in-service date. Accordingly, Algonquin needs access to Tract R-83.01 as identified in the Verified Complaint as soon as possible to ensure timely completion of all pre-installation and construction activities.

24.     It is in the public interest that Algonquin be granted possession of the easement and temporary work space no later than October 1, 2015. The incremental natural gas transportation capacity to be provided by the AIM Project is needed by the Project Shippers in order to meet the growing demand for natural gas.

25.     In addition, delay in the planned in-service date for the AIM Project would have serious financial consequences, as revenues to Algonquin from the Project are projected to be approximately $12,400,000.00 per month. Therefore, Algonquin must proceed diligently to complete the Project by the November 1, 2016 in-service date.

26.     Algonquin now seeks to acquire the remaining easements needed for construction and operation of the Project, including the Rights of Way. The drawings conform to the pipeline route reviewed and approved by the FERC in the FERC Certificate for the Property. The pipeline route is shown on the alignment sheets submitted to the FERC as part of Algonquin's application and subsequent filings. A true and correct copy of the portion of the alignment sheets which show the pipeline route crossing the Property is attached hereto as **Exhibit B**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 12, 2015.

James Luskay

7