# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALGONQUIN GAS TRANSMISSION, LLC, a limited liability company of the State of Delaware,<br><br>            Plaintiff,<br><br>v.<br><br>0.11 Acres Of Land, More or Less, In STONY POINT, ROCKLAND COUNTY, NEW YORK; MICHAEL MACALPIN AND CORDIS MACALPIN, fee owners; and ALL UNKNOWN OWNERS,<br><br>            Defendants. | Civil Action No. 15-cv-06178-CM |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ALGONQUIN GAS TRANSMISSION, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**DECOTIIS, FITZPATRICK & COLE, LLP**
Glenpointe Centre West
Teaneck, New Jersey 07666
Tel.: (201) 928-1100
Attorneys for Plaintiff,
Algonquin Gas Transmission, LLC

On the Brief
    Michael J. Ash, Esq.
    Megan E. Sassaman, Esq.

Of Counsel
    Jeffrey D. Smith, Esq.

Of Counsel
    CARTER LEDYARD & MILBURN LLP
    Christine A. Fazio, Esq.
    Victor J. Gallo, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS.........................................................2

    A.     OVERVIEW OF THE AIM PROJECT....................................................................2

    B.     ALGONQUIN'S GOOD FAITH EFFORTS TO ACQUIRE THE
        EASEMENTS THROUGH NEGOTIATIONS AND TO OBTAIN
        COOPERATION WITH NECESSARY CONSTRUCTION ACTIVITIES...........3

    C.     NECESSARY CONSTRUCTION OF THE AIM PROJECT.................................6

LEGAL ARGUMENT......................................................................................................................7

ALGONQUIN IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON
THE ISSUE OF THE AUTHORITY TO CONDEMN THE EASEMENT
ON THE PROPERTY.......................................................................................................................7

    A.     THE SCOPE OF REVIEW IN THE PRESENT ACTION IS
        LIMITED TO THE ACQUISITION OF THE SUBJECT
        PROPERTIES.........................................................................................................8

    B.     SUMMARY JUDGMENT STANDARD ...........................................................11

    C.     PROCEDURE SET FORTH BY THE NATURAL GAS ACT ...........................11

    D.     ALGONQUIN IS ENTITLED TO PARTIAL SUMMARY
        JUDGMENT .........................................................................................................13

CONCLUSION...............................................................................................................................17

i

## TABLE OF AUTHORITIES

**Page(s)**

Cases

Allianz Ins. Co. v. Lerner,
416 F.3d 109 (2d Cir. 2005)..................................................................................................... 11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)..................................................................................................... 11, 16

Columbia Gas Transmission, LLC v. An Easement to Construct, Operate
and Maintain a 20 Inch Gas Transmission Pipeline Across Properties In
Orange County New York Owned by Kenneth C. Muller, et al.,
7:11-cv-02394-KMK (S.D.N.Y 2011).......................................................................................... 8

Constitution Pipeline Co., LLC v. A Permanent Easement for 2.40 Acres
and Temp. Easements for 3.13 Acres in Davenport, Delaware Cnty., N.Y.,
No. 3:14-CV-2046 NAM, 2015 WL 1638211, at *3 (N.D.N.Y. Feb. 24, 2015).................... 10, 14

Guardian Pipeline, L.L.C. v. 529.42 Acres of Land,
210 F. Supp. 2d 971 (N.D. Ill. 2002) ............................................................................. 9, 14, 15

In re Permian Basin Area Rate Cases,
390 U.S. 747 (1968)........................................................................................................ 10

Islander East Pipeline Co, LLC v. Connecticut Dept. of Environmental Protection,
467 F.3d 295 (2d. Cir 2006).................................................................................................. 12

Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land,
210 F. Supp. 2d 1253 (D. Kan. 2002)...................................................................................... 14

Kern River Gas Transmission Company v. Clark County,
757 F. Supp. 1110 (D.Nev. 1990)............................................................................................. 9

Maritimes & Northeast Pipeline, L.L.C. v. Decoulos,
146 Fed.Appx.495, 498 (1st Cir. 2005) ............................................................................. 9, 13

Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)........................................................................................................ 11

McCulloch Interstate Gas Corp. v. Federal Power Comm'n,
536 F.2d 910 (10th Cir. 1976) ............................................................................................. 8

McPherson v. Coombe,
174 3d 276, 280 (2d Cir.1999) ............................................................................................ 11

Millennium Pipeline Co., L.L.C. v. Certain Permanent & Temp. Easements,
777 F.Supp.2d 475(W.D.N.Y. 2011), ............................................................................. passim

Pa. Pub. Util. Comm'n v. FERC,
881 F.2d 1123 (D.C. Cir. 1989) .......................................................................................... 10

Portland Natural Gas Transmission System v. 4.83 Acres of Land,
26 F.Supp.2d 332 (D.N.H. 1998) .......................................................................................... 9

Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078
Acres, More or Less in Monroe Township, 2008 WL 4346405 (W. D. Pa. Sept. 19, 2008) ... 10

Tennessee Gas Pipeline Co. v. 104 Acres of Land, More or less,
749 F. Supp. 427 (D.R.I. 1990) ....................................................................................... 9, 10

Tennessee Gas Pipeline Co. v. Massachusetts Bay Transp. Auth.,
2 F.Supp.2d 106 (D. Mass. 1998) ................................................................................... 9, 13

Texas Eastern Transmission Corp. v. Bowman,
115 So.2d 797 (La. 1959) ...................................................................................................... 8

Transcontinental Gas Pipeline Co. v. 118 Acres of Land,
745 F.Supp. 366 (E.D.La. 1990) ..................................................................................... 14, 15

Transwestern Pipeline Co. v. 17.19 Acres,
550 F.3d 770 (9th Cir. 2008) ............................................................................................... 12

USG Pipeline Co. v. 1.74 Acres in Marion County, Tennessee,
1 F. Supp. 2d 816 (E. D. Tenn. 1998) .................................................................................... 8

Williams Natural Gas Co. v. Oklahoma City,
890 F.2d 255 (10th Cir. 1989) ......................................................................................... 8, 10

**Statutes**

15 U.S.C. § 717(a) ................................................................................................................. 12

15 U.S.C. § 717(b) ................................................................................................................. 12

15 U.S.C. § 717f(c) ................................................................................................................ 12

15 U.S.C. § 717f(h) .......................................................................................................... passim

15 U.S.C. § 717r ................................................................................................................................. 9

15 U.S.C. § 717r(c) ........................................................................................................................... 10

15 U.S.C. §717r(a) ............................................................................................................................. 8

15 U.S.C., §717 .................................................................................................................................. 1

Rules

Fed.R.Civ.P. 71.1 ............................................................................................................................. 14

Federal Rule of Civil Procedure 56(c) ............................................................................................. 11

**PRELIMINARY STATEMENT**

Plaintiff Algonquin Gas Transmission, LLC ("Algonquin") respectfully submits this brief in support of its Motion for Partial Summary Judgment. Specifically, Algonquin seeks to have this Court grant the Motion for Partial Summary Judgment by entering an Order of Taking stating that Algonquin has the substantive right to take a temporary easement on the property that is the subject of this action.

Algonquin has been designated and approved by the Federal Energy Regulatory Commission ("FERC") to construct and operate a natural gas pipeline and associated facilities in New York, Connecticut, Rhode Island and Massachusetts. Pursuant to the Natural Gas Act, 15 U.S.C., §717 et seq., (the "Natural Gas Act", or the "NGA"), FERC issued a Certificate of Public Convenience and Necessity (the "FERC Certificate") on March 3, 2015, authorizing Algonquin to construct what is referred to as the Algonquin Incremental Market Project ("AIM Project", or the "Project").

The Natural Gas Act explicitly authorizes a natural gas company like Algonquin to acquire property interests by condemnation when it is unable to acquire the property interests by agreement with the property owner. 15 U.S.C. § 717f(h). Thus, Algonquin has filed a Verified Complaint to acquire a temporary easement needed to construct the AIM Project on property (the "OWNER Property" or "Property") owned by MICHAEL MACALPIN AND CORDIS MACALPIN (the "Defendant Owners").

As set forth more fully below, completion of the AIM Project is time sensitive. FERC has directed that Project construction be completed and the Project be in service by November 1, 2016. It is essential, therefore, that the necessary temporary easement on the OWNER Property be acquired in time to allow pre-construction preparation to begin no later than October 1, 2015.

1

## PROCEDURAL HISTORY AND STATEMENT OF FACTS[1]

### A.    OVERVIEW OF THE AIM PROJECT

The AIM Project involves the replacement of a portion of an existing 26-inch diameter pipeline with a 42-inch diameter pipeline along Algonquin's existing and new rights-of-way in Rockland and Westchester Counties, on a route through Connecticut and into Massachusetts, as well as modifications to existing metering and regulating stations and compressor stations to provide increased volumes of natural gas to southern New England. Declaration of James Luskay, ¶1. In New York State, the Project consists of 15.7 miles of the replacement of 26-inch diameter pipeline with 42-inch diameter pipeline in the existing Algonquin right-of-way that was established in the early 1950s and the installation of approximately 2.9 miles of new 42-inch diameter pipeline in a new right-of-way that will cross below the Hudson River via horizontal directional drill.  The Project also involves modifications to Algonquin's existing compressor stations located within the Town of Stony Point, Rockland County and within the Town of Southeast, Putnam County.  Modifications are also proposed to Algonquin's existing Stony Point, Peekskill and Cortlandt Meter stations involving new piping, heaters and regulators and the installation of various piping, valves, and internal inspection devices referred to as launchers and receivers. Luskay Declaration, ¶9.

The construction of the AIM Project will respond to market demands in the New England area. The Project will serve several important public interests.  It will: (a) provide the necessary pipeline capacity to transport significant and diverse natural gas supplies economically from a receipt point at Ramapo, New York to local distribution company shippers' delivery points in Connecticut and Massachusetts in order to meet their immediate and

---

[1] The facts set forth below are taken from the Declarations of James Luskay ("Luskay Declaration") Edward C. Harney ("Harney Declaration"), and the Verified Complaint filed herewith.

planned load growth demands; (b) meet demand in the region which is expected to continue to increase as more homes, commercial buildings, and industrial sources convert combustion and heating units and appliances to natural gas; and (c) the increased pipeline capacity along a significant portion of Algonquin's mainline will also partially alleviate existing system constraints, resulting in increased commodity price competition and reduced gas price volatility in the region.  Luskay Declaration, ¶10.

The FERC Certificate issued on March 3, 2015 authorizes Algonquin to construct, operate, and maintain the Project. Luskay Declaration, Ex. A.  FERC has found that the Project is in the public interest.  Id.  Notably, Algonquin was required to provide FERC with evidence of commercial agreements with eight local distribution companies and two municipal utilities including: Bay State Gas Company; Boston Gas Company; Colonial Gas Company; Connecticut Natural Gas Corporation; Middleborough Gas and Electric; The Narragansett Electric Company; Norwich Public Utilities; NSTAR Gas Company; The Southern Connecticut Gas Company; and Yankee Gas Services Company (the "Project Shippers") for the delivery of the entire capacity of the AIM Project. Luskay Declaration, ¶11. The in-service date for the delivery of natural gas in the contracts between Algonquin and the Project Shippers is November 1, 2016. Id.

**B.      ALGONQUIN'S GOOD FAITH EFFORTS TO ACQUIRE THE EASEMENTS THROUGH NEGOTIATIONS AND TO OBTAIN COOPERATION WITH NECESSARY CONSTRUCTION ACTIVITIES**

Outreach and Right of Way Negotiations.

Algonquin has been working since 2013 to identify the individual properties that would be affected by the construction of the Project. Harney Declaration, ¶¶2-3.  Since 2013, Algonquin's agents have been communicating with and meeting with property owners in an attempt to purchase the easements required for the construction of the Project.  Id.

3

Nevertheless, Algonquin has been unable to purchase the easements that it needs on the OWNER Property.  Harney Declaration, ¶14.

In early 2013, Algonquin began contacting property owners whose property might be affected by the AIM Project to inform them about the Project and Algonquin's intent to file an application to FERC for a Certificate of Public Convenience and Necessity that would authorize Algonquin to construct the Project. Harney Declaration, ¶2.  Algonquin's Right-of-Way acquisition team has been in communication with property owners, to inform them about the proposed route, timing and scope of the AIM Project. Harney Declaration, ¶6.  Algonquin hosted five (5) public informational meetings to discuss questions about the Pipeline.  Id. Algonquin held landowner informational meetings about the Project in April and May 2013 in the Village of Pomona and Towns of Stony Point, Shenorock, Bear Mountain, and Cortlandt, New York, and informational open houses in August 2013 in the Towns of Stony Point and Cortlandt, New York. Harney Declaration, ¶2.

The Right-of-Way acquisition team has kept property owners informed of FERC's permitting process for the AIM Project.  Harney Declaration, ¶7.  By correspondence dated August 20, 2013, property owners, including the Defendant Owners, were notified of FERC's Pre-Filing review process to enhance the identification and resolution of issues for the AIM Project's environmental review.  Id.  Property owners were informed of FERC's Notice of Intent to Prepare an Environmental Impact Statement for the AIM Project.  Harney Declaration, ¶8.  Property owners were invited to comment on the AIM Project at four scoping meetings.  Id.  By correspondence dated March 19, 2014, the Defendant Owners were given notice of Algonquin's application to FERC for a Certificate of Public Convenience and Necessity for the AIM Project.  Harney Declaration, ¶9. Enclosed with the letter was a

4

pamphlet from FERC that explained the certification process and addressed basic concerns of property owners. Id.  Property owners were informed of Algonquin's authority to acquire properties by eminent domain and provided with a description of the eminent domain process. Id.  Algonquin committed to work directly with property owners to reach mutually acceptable easement agreements without using the "threat" of eminent domain as a negotiating tool.  Id.

Algonquin has made several attempts to reach an agreement with the Defendant Owners to acquire the necessary property rights.  Harney Declaration, ¶12.  Algonquin retained a New York licensed appraiser to appraise the fair market value of the property right it needed in the OWNER Property. Harney Declaration, ¶¶11, 13.  Algonquin's agent contacted the Defendant Owners for the purpose of negotiating the acquisition of easement.  Harney Declaration, ¶¶12-13.  Algonquin's initial offer in the amount of $3,500.00 for the necessary temporary easement and $2,500.00 to relocate the Landowners' shed and fence on the Property was made in-person by land agent, Joe Gigliotti, to the Defendant Owners on May 2, 2015. Harney Declaration, ¶12.  Algonquin's efforts to purchase the necessary easement from Defendant Owners, culminated in a Final Offer Letter dated June 30, 2015. Harney Declaration, ¶13.  Algonquin offered to pay the total amount of $35,000.00, for the temporary easement required from Defendant Owners. Id. The appraised value for said easement is estimated to be $3,449.95.  Id. The Final Offer Letter stated that the Defendant Owners had to accept the offer by July 11, 2015, or Algonquin would file an action to take the easement rights.  Id.  The Defendant Owners did not accept Algonquin's final offer.  Id. As a result, plaintiff has been unable to acquire the above-described Property rights through good faith negotiations.  Id.

5

### C.    NECESSARY CONSTRUCTION OF THE AIM PROJECT

Construction of the Project must begin by no later than October 1, 2015, in order to meet Algonquin's in-service date. Before the installation of the natural gas pipeline can begin, certain construction activities must be completed. Each construction activity must be completed sequentially, and must be preceded by sequential, pre-construction tree cutting and clearing. Luskay Declaration, ¶20.  To avoid impacts to the Indiana bat, a federally listed endangered species, tree clearing must occur in the U.S. Fish and Wildlife Service ("FWS") designated tree clearing window from October 1 to March 30.  Id.  The northern long-eared bat is also proposed for listing as a federally endangered species and thus FWS directs tree clearing within the same window. Id.  The tree cutting and clearing on the Owner's Property must be completed between October 1, 2015 and March 30, 2016. Id.  Accordingly, access to the OWNER Property is needed as soon as possible to ensure that the pre-installation construction activities are completed in a timely manner.  Luskay Declaration, ¶23.

Upon completion of the pre-installation construction activities, Algonquin will authorize its contractors to begin pipeline installation.  The pipeline will be constructed in linear segments with multiple construction crews and equipment performing different functions in sequence, i.e., clearing, grading, ditching, stringing, installation, and backfilling. Luskay Declaration, ¶19. Construction also entails the complex coordination of construction activities controlled by contractors, during two construction seasons that include certain environmental "no work" periods and "no access" parcels where entry has been denied. Id.  Construction has been planned so that there will not be conflicting activities occurring at any location along the FERC-approved route. Accordingly, there are critical "start" dates for all construction activities.  Id.  Delay costs are estimated to be $50,000.00 per day. Luskay Declaration, ¶21. Additionally, if the sequenced

work schedule is disrupted by a bottleneck that occurs at a "no access" property, then the only alternative is to skip that property and move the crews and equipment to the next accessible property. Id. If construction of a property must be skipped, the crew will be required to return at a later date. Id. The "move around" costs for each skipped property would likely exceed $520,000.00. Id. In addition, delay in the planned in-service date for the AIM Project would have serious financial consequences, as revenues to Algonquin from the Project are projected to be approximately $12,400,000.00 per month. Luskay Declaration, ¶25.

Hence, it is critical that Algonquin provide the contractor with access to all properties along the route of the AIM Project. If Algonquin's construction crews are not able to enter in sequence any property along the route of the AIM Project, it will detrimentally affect Algonquin's ability to complete construction of the AIM Project by the FERC-directed November 1, 2016 in-service date.

## LEGAL ARGUMENT

### ALGONQUIN IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF THE AUTHORITY TO CONDEMN THE EASEMENTS ON THE PROPERTY

The FERC Certificate may not be collaterally attacked in this action, whether based on, for example, an alleged lack of notice, absence of due process in the FERC proceedings or failure by the condemnor to comply with the conditions of the certificate order. Under well-established law pursuant to the Natural Gas Act, Algonquin is entitled to an Order of Taking because: (1) it holds a FERC Certificate authorizing the construction of the Project, (2) the easement on the Property is necessary to construct the Project, and (3) Algonquin has been unable to purchase the easement from the Defendant Owners. In the Southern District of New York, as in other district courts to consider the issue, the Court has held that when a pipeline

7

company establishes compliance with the elements of 15 U.S.C. § 717f(h), partial summary judgment on the right to acquire easements by condemnation is appropriate. See, Columbia Gas Transmission, LLC v. An Easement to Construct, Operate and Maintain a 20 Inch Gas Transmission Pipeline Across Properties In Orange County New York Owned by Kenneth C. Muller, et al., 7:11-cv-02394-KMK (S.D.N.Y 2011) (copy attached hereto as Exhibit A). Because there is no issue of material fact as to any of these elements, the Court should enter an order granting partial summary judgment and ordering condemnation of the easement on the Property.

## A.   THE SCOPE OF REVIEW IN THE PRESENT ACTION IS LIMITED TO THE ACQUISITION OF THE SUBJECT PROPERTIES

The scope of review in condemnation proceedings brought under Section 7(h) of the Natural Gas Act is limited to the acquisition of the subject property. USG Pipeline Co. v. 1.74 Acres in Marion County, Tennessee, 1 F. Supp. 2d 816 (E. D. Tenn. 1998); see also, Texas Eastern Transmission Corp. v. Bowman, 115 So.2d 797 (La. 1959). A court's role is to authorize the condemnation of property included in a FERC Certificate. See, Williams Natural Gas Co. v. Oklahoma City, 890 F.2d 255, 262 (10th Cir. 1989). No one, including the Defendants herein, may challenge the FERC Certification in the instant action before this Court. Id. at 264. Any dispute as to the merits of the certificate of public convenience and necessity must be brought to FERC for rehearing. See, 15 U.S.C. §717r(a). In a condemnation action, a property owner may not dispute the propriety or validity of the FERC Certificate as a defense to the taking. McCulloch Interstate Gas Corp. v. Federal Power Comm'n, 536 F.2d 910, 913 (10th Cir. 1976). Thus, "[o]nce a [certificate of public convenience and necessity] is issued by the FERC, and the gas company is unable to acquire the needed land by contract or agreement with the owner, the

8

only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking." Maritimes & Northeast Pipeline, L.L.C. v. Decoulos, 146 Fed.Appx.495, 498 (1st Cir. 2005); Millennium Pipeline Co., L.L.C. v. Certain Permanent & Temp. Easements, 777 F.Supp.2d 475, 479 (W.D.N.Y. 2011), aff'd 552 Fed.Appx. 37 (2d Cir. 2014).

The NGA, at 15 U.S.C. § 717r, provides that the exclusive procedure for challenging a FERC order is with the Circuit Court.  See 15 U.S.C. § 717r (review of a FERC Certificate is the exclusive province of the appropriate court of appeals); Millennium Pipeline, 777 F.Supp.2d at 479 ("A district court's role in proceedings involving FERC certificates is circumscribed by statute, and when a landowner contends that the certificate holder is not in compliance with the certificate, that challenge must be made to FERC, not the court." (internal quotation marks omitted)); Guardian Pipeline, L.L.C. v. 529.42 Acres of Land, 210 F. Supp. 2d 971, 975 (N.D. Ill. 2002) (all objections to natural gas pipeline company's condemnation of land preempted as any such objections should have been raised with FERC or appropriate court of appeals); Portland Natural Gas Transmission System v. 4.83 Acres of Land, 26 F.Supp.2d 332, 334 n.1 (D.N.H. 1998) (district court in a condemnation action lacks jurisdiction to entertain any challenge to validity of a Certificate); Tennessee Gas Pipeline Co. v. Massachusetts Bay Transp. Auth., 2 F.Supp.2d 106, 110 (D. Mass. 1998) (district court's jurisdiction in an eminent domain action under the NGA extends only to examining the scope of the Certificate and ordering condemnation as authorized by the Certificate); Kern River Gas Transmission Company v. Clark County, 757 F. Supp. 1110, 1116 (D.Nev. 1990) (landowner  may not challenge FERC-approved pipeline route in eminent domain proceeding arising under the NGA); Tennessee Gas Pipeline Co. v. 104 Acres of Land, More or less, 749 F. Supp. 427, 430 (D.R.I. 1990) (challenges to a

9

FERC Certificate can be raised only by rehearing/appeal and landowner may not challenge a FERC Certificate in an eminent domain action arising under the NGA); see also, Williams Natural Gas Co., 890 F.2d at 264 (state court injunction of federal eminent domain proceeding was an impermissible collateral attack on a FERC Certificate).

Here, various interested parties have filed Requests for Rehearing with FERC but, absent a stay by FERC, those Requests for Rehearing do not limit these proceedings and do not affect Algonquin's substantive right to condemn or the need for immediate possession. Under the Natural Gas Act, filing an application for rehearing with FERC does not, "unless specifically ordered by the Commission, operate as a stay of the Commission's order." 15 U.S.C. § 717r(c); see, Tenn. Gas Pipeline Co., 749 F.Supp. at 429 (recognizing pipeline company's right to condemn despite pending requests for rehearing and holding that the "Natural Gas Act directs that an application for a rehearing shall not operate as a stay of the Commission's order unless specifically ordered by the Commission or by a reviewing Court of Appeals."); Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, More or Less in Monroe Township, Civ. A. Nos. 08-168, 08-169, 08-177, 08-179, 08-180, 2008 WL 4346405, at *3 (W. D. Pa. Sept. 19, 2008) (granting immediate possession to pipeline company while request for rehearings were pending); Constitution Pipeline Co., LLC v. A Permanent Easement for 2.40 Acres and Temp. Easements for 3.13 Acres in Davenport, Delaware Cnty., N.Y., No. 3:14-CV-2046 NAM, 2015 WL 1638211, at *3 (N.D.N.Y. Feb. 24, 2015) (FERC order extending time for the filing of rehearing requests does not operate as a stay and Court has to enforce original FERC Certificate and Order). Even the grant of a rehearing does not stay the original FERC Certificate absent FERC's grant of a stay. Pa. Pub. Util. Comm'n v. FERC, 881 F.2d 1123, 1125-26 (D.C. Cir. 1989); In re Permian Basin Area Rate Cases, 390 U.S. 747, 773 (1968) ("[t]he issuance of a

stay of an administrative order pending disposition by the Commission of a motion to 'modify or set aside, in whole or in part' the order is a matter committed by the Natural Gas Act to the Commission's discretion").

### B.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that a Court shall grant summary judgment to the movant "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In determining whether the moving party is entitled to summary judgment, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." McPherson v. Coombe, 174 3d 276, 280 (2d Cir.1999). See also, Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005)(Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor"). The nonmoving party cannot, however, defeat a well-founded motion for summary judgment merely on the strength of a conclusory assertion that fact issues exist. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Industrial Co., 475 U.S. at 586.

### C.    PROCEDURE SET FORTH BY THE NATURAL GAS ACT

The Natural Gas Act states that "[f]ederal regulation in matters relating to the

11

transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary for the public interest." 15 U.S.C. § 717(a). Hence, the Natural Gas Act establishes a comprehensive federal regulatory scheme for the transportation or sale of natural gas in interstate commerce. 15 U.S.C. § 717(b). Consequently, "[n]atural gas companies are subject to the exclusive jurisdiction of [FERC]," Islander East Pipeline Co, LLC v. Connecticut Dept. of Environmental Protection, 467 F.3d 295, 299 (2d. Cir 2006), and may not undertake "the construction . . . of any facilities . . . or operate any such facilities . . . unless" FERC has issued a Certificate "authorizing such acts or operations . . . ." 15 U.S.C. § 717f(c).

The NGA specifically provides that a natural gas company, such as Algonquin, has the authority to condemn any property interest needed to construct natural gas pipelines:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline or pipelines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary for the proper operation of such pipeline or pipelines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. §717f(h) (emphasis added).

Accordingly, a natural gas company is entitled to an order of taking or condemnation under § 717f(h) when it satisfies three conditions: (1) a FERC Certificate authorizes the construction of the pipeline; (2) the use of a particular parcel of land is necessary to comply with the Certificate; and (3) the pipeline company has been unable to agree with the owner of the property on the amount of compensation to be paid. See, e.g., Transwestern Pipeline Co. v. 17.19 Acres, 550 F.3d 770, 776 (9th Cir. 2008); Millennium Pipeline, 777 F.Supp.2d at 479;

Tennessee Gas Pipeline Co., 2 F.Supp.2d at 110 (granting natural gas company's motion to confirm condemnation of easements upon showing that it satisfied the three conditions). Thus, "[o]nce a [certificate of public convenience and necessity] is issued by the FERC, and the gas company is unable to acquire the needed land by contract or agreement with the owner, the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking." Maritimes & Northeast Pipeline, 146 Fed.Appx. at 498; Millennium Pipeline, 777 F.Supp.2d at 479.

Algonquin has established each of these conditions here.  Algonquin holds a FERC Certificate under which it may exercise the federal power of eminent domain. Second, FERC has approved the AIM Project, including its size, the location of easements and critical issues concerning the construction and operation of the Project and determined that the AIM Project is in the public interest.  As a result, the easement sought here is necessary to the Project. Finally, Algonquin has been unable to acquire the easement from the Defendant Owners by contract or agreement.

### D.      ALGONQUIN IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

Algonquin respectfully requests that this Court grant partial summary judgment and issue an Order of Condemnation that Algonquin has the substantive right to condemn the easement. Algonquin has met the requirements of 15 U.S.C. § 717f(h): it has a certificate of public convenience and necessity issued by FERC; the easement on the Property is necessary to construct the Project; and it has not been able to acquire the needed land by contract or agreement with the owner.

The Natural Gas Act does not require Algonquin to enter into protracted negotiations with a property owner. Nor does Rule 71.1(h) or the NGA require Algonquin to exhaust

13

negotiations before filing for condemnation. Indeed, many Courts have ruled that the NGA does not even require Algonquin to have negotiated in good faith. See, e.g., Maritimes & Northeast Pipeline, 146 Fed. Appx. at 496 (holding plain language of NGA imposes no obligation to negotiate in good faith); Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land, 210 F. Supp. 2d 1253, 1257 (D. Kan. 2002) (holding plain language of NGA renders no good faith requirement, only rejected offer to purchase); Guardian Pipeline, L.L.C., 210 F. Supp. 2d at 973 (holding that neither the NGA nor Fed.R.Civ.P. 71.1 impose a good faith requirement).

The Second Circuit has not yet determined whether a condemnor must show that it negotiated in good faith before obtaining property by eminent domain under § 717f(h). See, Millennium Pipeline, 552 Fed.Appx. at 39. A district court within the Second Circuit has ruled that even assuming that the NGA did require a good faith negotiation, that standard would be met where a pipeline company has made at least one offer based on the opinions of an appraiser and the parties were thereafter unable to reach an agreement. Constitution Pipeline Co., LLC, 2015 WL 1638211 at *3. Generally, a pipeline company can show that it negotiated in good faith by demonstrating that it attempted to acquire the property rights from the landowner by agreement or contract prior to commencing condemnation proceedings. See, Millennium Pipeline, 777 F.Supp. 2d at 483; Transcontinental Gas Pipeline Co. v. 118 Acres of Land, 745 F.Supp. 366, 369 (E.D.La. 1990). Algonquin has far exceeded its obligation to negotiate even under a good faith standard as shown by the long record of communications and correspondence with the Defendant Owners. Algonquin has made several attempts to reach an agreement with the Defendant Owners to acquire the necessary property rights. Harney Declaration, ¶¶12-13.

- By correspondence dated March 19, 2014, the Defendant Owners were given notice of Algonquin's application to FERC for a Certificate of Public Convenience and Necessity

14

for the AIM Project. Harney Declaration, ¶9. Enclosed with the letter was a pamphlet from FERC that explained the certification process and addressed basic concerns of property owners. Id. Property owners were informed of the authority of Algonquin to acquire properties by eminent domain and provided with a description of the eminent domain process. Id. Algonquin committed to work directly with property owners to reach mutually acceptable easement agreements without using the "threat" of eminent domain as a negotiating tool. Id.

- Algonquin retained a New York licensed appraiser to appraise the fair market value of the property right it needed in the OWNER Property. Harney Declaration, ¶¶11, 13. Algonquin's agent contacted the Defendant Owners for the purpose of negotiating the acquisition of the easement. Harney Declaration, ¶12-13.

- Algonquin's initial offer in the amount of $3,500.00 for the necessary temporary easement and $2,500.00 to relocate the Landowners' shed and fence on the Property was made in-person by land agent, Joe Gigliotti, to the Defendant Owners on May 2, 2015. Harney Declaration, ¶12. Algonquin's efforts to purchase the necessary easement from Defendant Owners, culminated in a Final Offer Letter dated June 30, 2015. Harney Declaration, ¶13. Algonquin offered to pay the total amount of $35,000.00, for the necessary temporary easement required from Defendant Owners. Id. The appraised value for said easement is estimated to be $3,449.95. Id.

- The Final Offer Letter stated that the Defendant Owners had to accept the offer by July 11, 2015, or Algonquin would file an action to take the easement rights. Id. The Defendant Owners did not accept Algonquin's final offer. Id. As a result, Algonquin has been unable to acquire the above-described property rights through good faith

15

negotiations. Id.

Algonquin has exhausted good faith negotiations with the Defendant Owners and has been unable to acquire an easement on the Property through such good faith negotiations.   It is now critical that Algonquin be able to provide the contractors with access to all properties for pre-installation and construction work along the route of the AIM Project. Without access to necessary properties in a timely manner, Algonquin's ability to complete construction of the Project by November 1, 2016 will be jeopardized.

Finally, the jurisdictional requirement that the Defendant Owners reject an offer of at least $3,000 has been met. Thus, Algonquin is authorized to exercise the federal power of eminent domain. See, Millennium Pipeline, 777 F.Supp.2d at 479; Constitution Pipeline Co., LLC, 2015 WL 1638211 at *3.  On this record, resolving all ambiguities and drawing all factual interferences in Defendant Owners' favor, there is no genuine issue with regard to any material fact that would prevent the entry of summary judgment. See, Celotex Corp., 477 U.S. at 322. Algonquin has satisfied the three conditions set forth in the Natural Gas Act prior to the exercise of eminent domain. As such, Algonquin is entitled to partial summary judgment holding that, pursuant to the NGA and the FERC Order, it has the substantive right to condemn the temporary easement as described in Exhibit A of the complaint.

16

## **CONCLUSION**

For the reasons set forth above, the Court should grant Algonquin's Motion for Partial

Summary Judgment and enter an Order of Taking.

Respectfully submitted,

Dated: August 13, 2015                    s/ Jeffrey D. Smith

Jeffrey D. Smith, Esq.
**DeCOTIIS, FITZPATRICK & COLE, LLP**
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, New Jersey 07666
Tel.: (201) 928-1100
Attorneys for Plaintiff,
Algonquin Gas Transmission, LLC

17