ALGONQUIN GAS TRANSMISSION, LLC, a limited partnership of the State of Delaware,

Plaintiff,

v.

0.11 Acres Of Land, More or Less, In STONY POINT, ROCKLAND COUNTY, NEW YORK; MICHAEL MACALPIN AND CORDIS MACALPIN, fee owners; and ALL UNKNOWN OWNERS,

Defendants.

# Exhibit A

**TO THE MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ALGONQUIN GAS TRANSMISSION, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COLUMBIA GAS TRANSMISSION LLC,

        Plaintiff,

-v-

AN EASEMENT TO CONSTRUCT, OPERATE
AND MAINTAIN A 20-INCH GAS
TRANSMISSION PIPELINE ACROSS
PROPERTIES IN ORANGE COUNTY, NEW
YORK, OWNED BY KENNETH C. MULLER (TM
41-1-24, TM 41-1-17.221), MARILYN R. MULLER
AND THE UNKNOWN HEIRS, DEVISEES, &
LEGATEES OF KENNETH E. MULLER (TM-41-1-
17.222) and UNKNOWN PERSONS AND
INTERESTED PARTIES,

        Defendants.

Case No. 11-CV-2394 (KMK)

ORDER

---

KENNETH M. KARAS, District Judge:

### I. Background

    Plaintiff Columbia Gas Transmission LLC ("Plaintiff") is in the midst of a project (the "Project") to upgrade an interstate natural gas pipeline. The Federal Energy Regulatory Commission ("FERC"), which approved the Project, has ordered Plaintiff to complete the Project by March 17, 2012. In order to construct, operate, and maintain the pipeline, Plaintiff requires easements from private landowners. Plaintiff was unable to obtain the required easement from Kenneth C. Muller and Marilyn Muller ("Defendants"), two of the landowners affected by the Project, and, accordingly, brought this action seeking to obtain the necessary easements through eminent domain.

    On June 7, 2011, Plaintiff submitted a letter to the Court requesting to file an expedited

Motion to Enforce Settlement or, in the alternative, for Partial Summary Judgment and Immediate Access (the "Motion"). In this letter, Plaintiff informed the Court that on March 28, 2011, Defendants had signed agreements granting Plaintiff easements over Defendants' properties to construct the pipeline; however, Plaintiff still had been unable to access the properties. Plaintiff also indicated that it needed to access the properties by June 15, 2011, to start pre-construction work in sequence with the other segments of the Project, or Plaintiff would be at risk of not meeting the FERC deadline and/or Plaintiff's contractual obligations to provide service to the individuals and businesses that receive natural gas through the pipeline.[1]

On June 9, 2011, the Honorable Robert P. Patterson, acting in his capacity as Part I judge, issued an order requiring Defendants to show cause, at a hearing before the undersigned on June 13, 2011, why an order should not be entered: (1) enforcing the settlement agreements dated March 28, 2011 by preventing Defendants from interfering with Plaintiff's activities on the acquired easements; or (2) in the alternative, granting summary judgment as to Plaintiff's authority to take interests in Defendants' properties and granting Plaintiff immediate access to Defendants' properties to start construction of the pipeline. (Order to Show Cause ("OSC") 1-2 (Dkt. No. 3).) Subsequently, Plaintiff filed a memorandum of law, declarations and exhibits in support of the Motion on June 10, 2011. (Dkt. Nos. 4-9.) The Court received these papers on June 13, 2011, shortly before the hearing was to begin.[2]

---

[1] It is undisputed that Defendant Kenneth C. Muller retained an attorney to represent Defendants during the negotiations leading to these agreements. Defendant Kenneth C. Muller has power of attorney over Defendant Marilyn Muller. As noted below, Defendants have not retained a lawyer to represent them in this action.

[2] The Order to Show Cause also provided that Defendants' answering papers were to be served by June 10, 2011 at 3:00 P.M. (OSC 2); however, Defendants have represented that they did not even receive Plaintiff's submission until June 10, 2011, at 5:00 P.M.

2

Counsel for Plaintiff, and Defendant Kenneth C. Muller, proceeding pro se, appeared before the Court on June 13, 2011. At the hearing, Defendant Kenneth C. Muller admitted that he had signed an agreement, but showed the Court evidence that he believes indicates that after the agreements were signed, Plaintiff changed the classification of a portion of the amount it had agreed to pay to Defendants from "additional damages" to "consideration for signing," which Defendants maintain has negative tax implications and is contrary to the agreements reached by the Parties.[3] Plaintiff disputed Defendants' contention and reiterated its position that it should be allowed immediate access to the properties pursuant to both the settlement agreements and the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717 *et seq.* Later that same day, the Court held a further hearing by telephone conference with the Parties.

On June 14, 2011, Defendants requested additional time to obtain an attorney and respond to Plaintiff's application. Although mindful of Plaintiff's need to have the application decided on an expedited basis, the Court determined that in the interest of fairness, Defendants should be given additional time to retain counsel and/or respond to Plaintiff's application, particularly because Plaintiff had not explained why exactly it was necessary to start work

---

[3] The Court has been provided with a number of different agreements and, at the hearing, the Parties indicated that there was still another agreement that was not submitted to the Court. The agreements all describe the compensation to be paid to Defendants as "damages"; none of the agreements mention "consideration for signing." However, to the best of the Court's understanding, after the agreements were signed on March 28, 2011, Plaintiff provided the lawyer who represented Defendants' during the negotiations (but who no longer represents Defendants) with a chart classifying the compensation to be paid by Plaintiff to Defendants into various categories, including "Perm," "TWS," "ETW," "Timber," and "Consideration for Sign." (Decl. of Jeffrey S. Barna Ex. J.) At the hearing, Defendants showed the Court emails from Plaintiff indicating that the category and amount currently listed as "Consideration for Sign" had been changed to that label from "Addl Damage Pmt." (Ct. Ex. A.) These emails are dated March 28, 2011, but were not sent to Defendants' counsel until after the agreements had been signed. Defendants maintain that the change in classification will require them to report these payments as income, instead of as damages caused by the condemnation.

3

precisely on June 15, 2011, as opposed to a couple of days later.[4] The Court thus granted Defendants' request, permitting them until June 17, 2011, to submit any opposition. (Dkt. No. 11.) The Court has still endeavored to decide Plaintiff's application on an expedited time frame in light of Plaintiff's representation that it needed to access Defendants' properties by June 15, 2011, one week after the Court was first notified of the situation and two days after the Court held the hearing.

Defendant Kenneth C. Muller has since indicated, in a letter to the Court dated June 15, 2011, that the lawyer he had contacted would not be able to respond to Plaintiff's application until later this week. Defendant Kenneth C. Muller also has submitted correspondence to the Court seeking the Court's intervention in the potential tax consequences of the agreements dated March 28, 2011. Defendants, however, have never contested Plaintiff's claims seeking access to Defendants' property.

## II. Request to Enforce Settlement Agreement

Plaintiff has requested that the Court enforce the agreements dated March 28, 2011 and allow Plaintiff to access Defendants' land in accordance with the agreements. However, as explained *supra* note 3, although Defendants signed those agreements, they maintain that Plaintiff has since changed the classification of a portion of the compensation. The Court reiterates that the agreements that were signed do not discuss the characterization of the compensation nor the expected tax treatment of Plaintiff's payments to Defendants. However, given that Defendants have indicated that these classifications were an important part of what

---

[4] Defendant Kenneth C. Muller explained at the hearing that he had in fact consulted with an attorney after receiving Plaintiff's Order to Show Cause papers, but that the lawyer had indicated that he could not prepare a response by the return date (June 13, 2011).

4

was agreed to by the Parties, as well as the evidence that Defendants claim demonstrates that these classifications may have been changed after Defendants signed the agreements, the Court is willing to assume, for the time being, that there is a good faith factual dispute regarding whether the Parties had a meeting of the minds. Accordingly, for now, the Court expresses no position as to whether the agreements are enforceable, whether the compensation should be considered "additional damages" or "consideration for signing," or any tax implications of the compensation provided for in the agreements, and will instead address Plaintiff's other application for access to Defendants' properties pursuant to the Natural Gas Act.

### III. Right to Eminent Domain Under the Natural Gas Act

Aside from relying on its purported agreements with Defendants, Plaintiff has requested that the Court grant it partial summary judgment on the issue of Plaintiff's right, pursuant to the Natural Gas Act, to condemn easements over Defendants' properties for purposes of the Project. Summary judgment may be granted when it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (same). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

The NGA permits a gas company to acquire property by eminent domain if certain conditions are satisfied. The relevant section of the NGA provides that:

5

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located . . . .

15 U.S.C. § 717f(h). Thus, a court may conclude that a gas company is entitled to an easement by condemnation if: (1) the company holds a FERC certificate authorizing a pipeline project; (2) the land sought to be condemned is necessary to the pipeline project; and (3) the company and the landowner have failed to agree on a price for the taking. *See Nat'l Fuel Gas Supply Corp. v. 138 Acres of Land*, 84 F. Supp. 2d 405, 416 (W.D.N.Y. 2000); *see also Transw. Pipeline Co. v. 17.19 Acres of Property*, 550 F.3d 770, 776 (9th Cir. 2008) (same).

Here, all three elements have been satisfied. First, Plaintiff has provided the Court with the relevant FERC certificate authorizing the Project.[5] (Decl. of Jeffrey S. Barna ("Barna Decl.") Ex. A.) Second, because the route for the Project must go through Defendants' land, Plaintiff must access Defendants' property to complete the Project in accordance with the FERC certificate. Third, as explained *supra* Section II, despite the existence of the signed settlement agreements, the dispute between the Parties over the classification of the compensation and the

---

[5] Courts have routinely held that district courts do not have jurisdiction to review the validity of a FERC certificate in actions brought pursuant to 15 U.S.C. § 717f(h). *See, e.g., Williams Natural Gas Co. v. City of Okla. City*, 890 F.2d 255, 262 (10th Cir. 1989); *N. Natural Gas Co. v. Approx. 9117.53 Acres*, No. 10-CV-1232, 2011 WL 947091, at *7 (D. Kan. Mar. 15, 2011) ("[T]he exclusive avenue for judicial review of a FERC order is a timely appeal to the appropriate circuit court of appeals."); *Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 749 F. Supp. 427, 430 (D.R.I. 1990) ("The District Court's role is to evaluate the scope of the certificate and to order condemnation of property as authorized in the certificate. District Courts, therefore, are limited to jurisdiction to order condemnation of property in accord with a facially valid certificate." (citations omitted)).

6

meaning of the agreements leads the Court to assume, for these purposes, that the Parties have not agreed on the compensation to be paid for the easement. At a minimum, even if there were signed agreements between the Parties, there appears to be some dispute, at least from Defendants' perspective, as to whether those agreements are being properly implemented. Thus, Plaintiff has established that it has a right to condemn the properties in question. Indeed, at the hearing, Defendants did not contest that Plaintiff is entitled to the easement. Accordingly, summary judgment for Plaintiff on the issue of its right to eminent domain is appropriate, and Plaintiff has the right to condemn the easements on Defendants' property required for the Project. *See Nw. Pipeline Corp. v. 20' x 1.430' Pipeline Right of Way Easement*, 197 F. Supp. 2d 1241, 1243 (E.D. Wash. 2002) (granting summary judgment for the plaintiff where the defendant conceded that the plaintiff was entitled to an easement under the NGA).[6]

---

[6] Before exercising condemnation authority, some courts have also imposed a requirement that the gas company have negotiated in good faith with the property owner to obtain the necessary rights. *See, e.g., Transw. Pipeline Co.*, 550 F.3d at 776; *Nat'l Fuel Gas*, 84 F. Supp. 2d at 416; *USG Pipeline Co. v. 1.74 Acres*, 1 F. Supp. 2d 816, 822 (E.D. Tenn. 1998). However, other courts have rejected the good-faith negotiation prerequisite because the plain language of 15 U.S.C. § 717f(h) contains no such requirement. *See, e.g., Mars. & Ne. Pipeline, L.L.C. v. Decoulos*, 146 F. App'x 495, 498 (1st Cir. 2005) (per curiam); *N. Natural Gas*, 2011 WL 947091, at *5; *Kan. Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F. Supp. 2d 1253, 1257 (D. Kan. 2002). Although the Court believes that are serious questions as to whether good-faith negotiation is a requirement given the absence of any language to that effect in the statute, the Court need not decide the issue because here any such requirement would be met. The evidence clearly demonstrates that Plaintiff made offers and negotiated with Defendants and their counsel in an attempt to reach an agreement to obtain the necessary easements. Although the Parties now may dispute the categorization of the compensation payments—and regardless of what may have occurred after the putative agreements were signed—there is no question that Plaintiff made bona fide offers to acquire the easements over Defendants' properties. Indeed, it is undisputed that Plaintiff has cut two checks to Defendants in the amount of $330,000, as per these agreements. While Defendants may disagree with Plaintiff about the tax treatment of these payments, there can be no dispute, for these purposes, about Plaintiff's good faith in negotiating with Defendants.

7

### IV. Right to Immediate Access

Plaintiff urges the Court to grant it immediate access to Defendants' property. The NGA does not specifically provide for such relief, but courts have granted requests for possession prior to full completion of eminent domain proceedings where an order of condemnation has issued but the issue of compensation is yet to be determined. However, the circuit courts that have addressed this issue have determined that a district court may not grant immediate possession where no order of condemnation has been issued. *See Transw. Pipeline Co.*, 550 F.3d at 777 (affirming district court's denial of request for preliminary injunction granting gas company immediate possession because the company had not filed a summary judgment motion seeking an order of condemnation and, "[g]iven the limited statutory authority afforded by the NGA, an order of condemnation must be issued before the substantive right of taking accrues"); *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 825 (4th Cir. 2004) (determining that once the right to condemn is established by court order, a court can grant a gas company the equitable relief of immediate possession if the strict requirements for a preliminary injunction are satisfied); *N. Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469, 471-72 (7th Cir. 1998) (denying request for immediate possession because the gas company had no substantive entitlement to the requested relief where it possessed a FERC certificate but had not obtained an order of condemnation). *But see Nat'l Fuel Gas*, 84 F. Supp. 2d at 416 (considering, but denying on the merits, gas company's request for immediate access through an exercise the court's equitable powers where the company had made no motion seeking a condemnation order). Although the right to eminent domain is often established in a separate proceeding before the gas company moves for immediate possession, some courts have determined that the company has both the right to condemn and the right to take immediate possession in the same application. *See E.*

8

*Tenn. Natural Gas, LLC v. 1.28 Acres*, No. 06-CV-22, 2006 WL 1133874, at *14-15 (W.D. Va. Apr. 26, 2006); *Nw. Pipeline Corp.*, 197 F. Supp. 2d at 1246. In the instant motion, Plaintiff has asked the Court to determine that Plaintiff has the right to eminent domain and also to grant it access to Defendants' property. Because the Court has concluded that Plaintiff is entitled to summary judgment as to the right to condemn under the NGA, the Court also will determine whether Plaintiff should be allowed immediate access.

The request for immediate access "is addressed to the Court's equitable powers . . . [and] is in the nature of a preliminary injunction." *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000). "A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008). "When the movant seeks a 'mandatory' injunction—that is . . . an injunction that will alter rather than maintain the status quo—[the movant] must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits." *Id.*

Here, FERC has given Plaintiff a deadline of March 17, 2012, by which to install the pipeline and place it into service. (Barna Decl. ¶ 3.) Plaintiff must conduct its construction in sequence, moving from property to property. To meet this deadline, Plaintiff has represented that it must begin work on Defendants' properties by June 15, 2011. (*Id.* ¶ 24.) Plaintiff asserts that if it "is denied such entry, the entire project will be delayed, [Plaintiff] will risk not meeting the FERC's deadline, and the public at large will suffer because [Plaintff] will be unable to use the upgraded, efficient pipeline to transmit gas during peak demand periods." (*Id.* ¶¶ 3, 25.) If

9

Plaintiff cannot access Defendants' properties and is thus unable to meet its construction schedule, it maintains that it (and the public) will suffer substantial harm. (*Id.* ¶ 25.)

Courts have found a likelihood of irreparable harm in similar circumstances. *See Sage*, 361 F.3d at 828-29 (concluding that without an injunction allowing immediate possession, the gas company would be unable to meet FERC's deadline and face irreparable harm such as increased construction costs and losses from its breach of gas supply contracts); *E. Tenn. Natural Gas*, 2006 WL 1133874, at *13-14 (finding likelihood of irreparable harm requirement established because the gas company presented evidence that it would suffer undue delay causing significant financial harm if it did not obtain immediate possession of the property); *Guardian Pipeline L.L.C. v. 950.80 Acres of Land*, 210 F. Supp. 2d 976, 979 (N.D. Ill. 2002) (finding that it was "clear that plaintiff will suffer irreparable harm if it cannot proceed" where it needed to complete a pipeline by a certain date determined by FERC and "any delays or an inability to sequence construction will occasion great additional expense to plaintiff"); *N. Border Pipeline Co.*, 125 F. Supp. 2d at 301 (determining that without immediate possession, the construction of the gas company's pipeline would be delayed, resulting in increased construction costs that could not be recovered from the defendants in any proceeding, making the harm irreparable); *USG Pipeline Co. v. 1.74 Acres*, 1 F. Supp. 2d 816, 825 (E.D. Tenn. 1998) (determining that gas company faced irreparable harm where it would suffer substantial financial and other detriment if construction of the pipeline was delayed).

Here, although the Court agreed to allow Defendants two extra days beyond the purported June 15, 2011 deadline to respond to the instant application (and a week after their response to the Order to Show Cause was due), the Court concludes that Plaintiff has sufficiently established that it will suffer a likelihood of irreparable harm if not granted immediate access to

10

Defendants' properties. The Project is being performed in assembly-line fashion; Plaintiff cannot simply skip Defendants' properties without incurring substantial harm. Without such access, the entire project will be delayed, causing harm to Plaintiff, its consumers, and the public. If Plaintiff is unable to comply with its FERC deadline, it will not have an adequate remedy at law. In contrast, Defendants have not argued that Plaintiff should not be allowed to access their land; instead, their dispute concerns the proper characterization of the compensation that they are owed under the agreements. Accordingly, Defendants face no irreprable harm, because any damage to their interests caused by Plaintiff's entry onto Defendants' land prior to a final determination of compensation can be rectified through money damages, assuming the agreements are not enforced.

In addition, Plaintiff has also established a clear likelihood of success on the merits. Plaintiff is entitled to an easement on Defendants' properties by virtue of the Court granting it summary judgment on its right of eminent domain. "Thus, it is virtually certain that [P]laintiff will succeed on the merits." *N. Border Pipeline Co.*, 125 F. Supp. 2d at 301; *see also Sage*, 361 F.3d at 829-30 ("[Plaintiff] has a determination on the merits that it has a right to condemn the landowners' property[;] . . . [s]uccess on the merits for [Plaintiff] is therefore apparent."); *Guardian Pipeline*, 210 F. Supp. 2d at 979 ("[Plaintiff] has an established likelihood of success on the merits because the condemnation order has been entered."). The only thing left to determine is the compensation that Plaintiff must pay to Defendants for the easements, which can be determined at a later point. Accordingly, Plaintiff has established that a preliminary injunction is warranted and, accordingly, the Court grants Plaintiff's application for immediate

access to Defendants' properties.[7]

### V. Conclusion

For the reasons stated herein, Plaintiff's Motion is denied without prejudice to the extent it seeks to have the Court enforce the agreements dated March 28, 2011. The alternative request in Plaintiff's Motion for partial summary judgment and immediate access is granted. Plaintiff has a right to condemn the easements over Defendants' properties necessary for Plaintiff's completion of the Project and it is ordered that Plaintiff be allowed immediate access to Defendants' properties to start construction.

SO ORDERED.

Dated:   White Plains, New York
         June 21, 2011

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[7] When granting requests for immediate possession prior to final determination of compensation in eminent domain proceedings, courts have typically required a plaintiff to post bonds sufficient to cover any potential damage to the defendant's property. Here, such a bond is unnecessary, because Plaintiff has already sent Defendants checks totaling $330,000, the amount the Parties apparently had agreed to before their dispute arose as to the classification of the compensation. The Court finds that Plaintiff need not submit a bond in addition to these checks, especially given that there is no reason to doubt Plaintiff's solvency.

12